**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| BRAEMAR HOTELS & RESORTS INC.,<br><br>Plaintiff,<br><br>-against-<br><br>BLACKWELLS CAPITAL LLC, BLACKWELLS ONSHORE I, LLC, BLACKWELLS HOLDING CO. LLC, VANDEWATER CAPITAL HOLDINGS, LLC, BLACKWELLS ASSET MANAGEMENT LLC, BW COINVEST MANAGEMENT I LLC, JASON AINTABI, MICHAEL CRICENTI, JENNIFER M. HILL, BETSY L. MCCOY, AND STEVEN J. PULLY,<br><br>Defendants. | Civil Action No. 3:24-cv-00707 |

**DEFENDANTS'
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY AND BRIEFING**

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ........................................ 1

STATEMENT OF FACTS ........................................ 2

ARGUMENT ........................................ 4

A. Braemar lacks good cause to seek expedited discovery because it lacks standing to bring the sole claim that could invoke the jurisdiction of this Court. ........................................ 4

B. The PSLRA's stay of discovery mandates denial of the Motion to Expedite. ........................................ 6

1. The PSLRA imposes a mandatory stay of discovery on Braemar's claims until the Court has resolved Defendants' forthcoming Motion to Dismiss. ........................................ 7

2. The Motion to Expedite does not carry Braemar's heavy burden to establish extraordinary circumstances justifying the lifting of the PSLRA's mandatory stay of discovery. ........................................ 8

(a) Braemar cannot establish that lifting the PSLRA's discovery stay is necessary to "preserve evidence." ........................................ 9

(b) Braemar cannot establish that it would face "undue prejudice" absent the lifting of the PSLRA's discovery stay. ........................................ 9

3. Braemar's discovery requests are not "particularized" to its purported need for the discovery. ........................................ 17

C. Braemar's request for expedited discovery also fails to satisfy the standard for expedited discovery under the Federal Rules of Civil Procedure. ........................................ 21

CONCLUSION ........................................ 22

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*,
38 F.3d 211 (5th Cir. 1994) ....................4

*Alaska Laborers Emps. Ret. Fund v. Mays Clear Channel Commc'ns, Inc.*,
No. SA-07-CA-0042-RF, 2007 WL 9710527 (W.D. Tex. Feb. 14, 2007) ....................16

*Ashford Hosp. Prime Inc. v. Sessa Capital (Master) LP*,
Nos. 3:16-CV-00527-N, 3:16-CV000713-N, 2017 WL 2955366 (N.D. Tex. Feb. 17, 2017) ....................2, 4, 16

*Barrett v. Wilson*,
No. 4:11-CV-02852, 2011 WL 13134638 (S.D. Tex. Aug. 15, 2011) ....................8, 21, 22

*Bellin v. La Pensee Condo. Ass'n, Inc.*,
No. 05-80071-CIV, 2005 WL 8156021 (S.D. Fla. Oct. 13, 2005), *report and recommendation adopted*, 2006 WL 8433644 (S.D. Fla. Jan. 6, 2006) ....................15

*BHI Energy I Power Servs., LLC v. KVP Energy Servs., LLC*,
No. 3:22-CV-1981-L, *LLC*, 2023 WL 223179 (N.D. Tex. Jan. 17, 2023) ....................10, 13

*Botton v. Ness Techs. Inc.*,
No. 11-3950, 2011 WL 3438705 (D.N.J. Aug. 4, 2011) ....................20, 21

*Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*,
554 F.3d 595 (5th Cir. 2009) ....................5

*City of Birmingham Ret. & Relief Sys. v. Armstrong*,
No. 16-17-RGA, 2016 WL 880503 (D. Del. Mar. 1, 2016) ....................16

*Creeks v. Arotech Corp.*,
No. 19-CV-10044, 2019 U.S. Dist. LEXIS 201871 (S.D.N.Y. Nov. 20, 2019) ....................7

*Davis v. Duncan Energy Partners L.P.*,
801 F. Supp. 2d 589 (S.D. Tex. 2011) .................... *passim*

*Degeeter v. McNeill*,
No. 07-2512-Ml/P, 2007 WL 9706576 (W.D. Tenn. Sept. 21, 2007) ....................12

*Desmarais v. First Niagra Fin. Grp., Inc.*,
No. 15-1226-LPS-CJB, 2016 WL 768257 (D. Del. Feb. 26, 2016) ....................11, 16

*In re Enron Corp. Sec., Derivative & "Erisa" Litig.*,
Nos. MDL-1446, Civ.A. H-01-3624, 2003 WL 230688 (S.D. Tex. Jan. 28, 2003) ....7

*EP MedSystems, Inc. v. EchoCath, Inc.*,
235 F.3d 865 (3d Cir. 2000) ....7

*In re Fannie Mae Sec. Litig.*,
362 F. Supp. 2d 37 (D.D.C. 2005) ....17

*Florida Marine Transporters, Inc. v. Trinity Marine Products, Inc.*,
No. CIV.A. 02–1902, 2002 WL 31246765 (E.D. La. Oct. 4, 2002) ....6

*Gunn v. Minton*,
133 S. Ct. 1059 (2013) ....5

*Herrley v. Frozen Food Exp. Indus., Inc.*,
No. 3:13-cv-3004-B(BF), 2013 WL 4417699 (N.D. Tex. Aug. 19, 2013) ....21

*Hinojosa v. Guidant Corp.*,
No. Civ.A. C-06-159, 2006 WL 903720 (S.D. Tex. Apr. 7, 2006) ....5

*Lusk v. Life Time Fitness, Inc.*,
No. 15-1911, 2015 WL 2374205 (D. Minn. May 18, 2015) ....16

*In re Meta Platforms, Inc. Sec. Litig.*,
No. 21-cv-08812-AMO, 2024 WL 923770 (N.D. Cal. Mar. 4, 2024) ....8, 15, 16

*Newby v. Enron Corp.*,
188 F. Supp. 2d 684 (S.D. Tex. 2002) ....7

*Nichting v. DPL Inc.*,
No. 3:11-CV-141, 2011 WL 2892945 (S.D. Ohio July 15, 2011) ....16, 20

*Oliver v. Trunkline Gas Co.*,
796 F.2d 86 (5th Cir. 1986) ....6

*Parker & Parsley Petroleum Co. v. Dresser Indus.*,
972 F.2d 580 (5th Cir. 1992) ....5

*Petrie v. Elec. Game Card*,
761 F.3d 959, 966 (9th Cir. 2014) ....15

*Sarantakis v. Gruttadauria*,
No. 02 C 1609, 2002 WL 1803750 (N.D. Ill. Aug. 5, 2002) ....9

*Schaper v. Lensar, Inc.*,
No. 23-692-GBW, 2023 WL 4532462 (D. Del. July 13, 2023) ....................................11, 16

*Solera Nat'l Bancorp, Inc. v. Quagliano*,
2014 WL 2058120 (D. Colo. May 19, 2014).............................................................5

*Tenet Healthcare Corp. v. Cmty. Health Sys., Inc.*,
839 F. Supp. 2d 869 (N.D. Tex. 2012) .....................................................................4

*Tri Cnty. Wholesale Distribs., Inc. v. Labatt USA Operating Co., LLC*,
No. 2:13-CV-317, 2013 WL 12180497 (S.D. Ohio Apr. 22, 2013).....................................16

*U.S. Bank, N.A. as Tr. for Registered Holders of AEGIS Asset Backed Sec. Tr. Mortgage Pass-Through Certificates, Series 2005-4 v. Richardson*, No. 3:17-CV-2271-L (BT), 2020 WL 10050787 (N.D. Tex. June 1, 2020).........................................10

*Villareal v. Saenz*,
No. 5-20-CV-00571-OLG-RBF, 2021 WL 1940620 (W.D. Tex. May 14, 2021), *report and recommendation adopted*, 2021 WL 4057570 (W.D. Tex. Aug. 4, 2021) ..........................................................................................................14

*Wong v. Stripling*,
881 F.2d 200 (5th Cir. 1989) ......................................................................................5

**Statutes**

15 U.S.C. § 78u-4 .............................................................................................6

15 U.S.C. § 78u–4(b)(3)(B) ........................................................................7, 8, 9

Md. Corp. & Ass'ns § 2-501 ..................................................................................14

Private Securities Litigation Reform Act of 1995 ............................................ *passim*

Securities Exchange Act of 1934 Section 14(a) ..................................1, 4, 5, 6, 7

**Other Authorities**

Federal Rule of Civil Procedure Rule 14a ..............................................................5, 6

Federal Rule of Civil Procedure 26(d)(1) ................................................................21

Federal Rule of Civil Procedure 26(a)(1)(B) ............................................................21

Federal Rule of Civil Procedure Rule 26(f) ..............................................................21

**Other Authorities**

11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2948.1 (3d ed. 2023)....................15

Rob Schneider, *Braemar Hotels faces board challenge from activist investor*, HOTEL INVESTMENT TODAY (Mar. 25, 2024), https://perma.cc/8RWR-V4LX ....................3

## PRELIMINARY STATEMENT

This case is about Plaintiff Braemar Hotels & Resorts Inc.'s ("Braemar" or "Plaintiff") effort to preempt free and fair director elections from taking place at its upcoming annual meeting of stockholders. On March 10, 2024, Defendant Blackwells Capital LLC, one of Braemar's largest shareholders, nominated Defendants Jennifer M. Hill, Betsy L. McCoy, Steven J. Pully and Michael Cricenti (the "Blackwells Nominees") to stand for election at that meeting. The right of stockholders—not management or the incumbent Board of Directors (the "Board")—to elect directors is the cornerstone of American corporate law. Thus, Braemar's stockholders should be given the right to vote freely and elect those directors that they believe will best serve Braemar's future. By this lawsuit, Braemar is trying to prevent that outcome. Given that Braemar's incumbent directors have overseen a nearly 90% collapse in Braemar's stock price over the last decade, their fear of an open election against Blackwells' highly qualified nominees is not surprising. They have thus asked this Court to enjoin Defendants from embarking on a campaign to solicit votes in favor of the Blackwells Nominees.

Braemar is a Maryland corporation. Its internal affairs are governed by Maryland state law. Braemar nonetheless seeks to invoke the jurisdiction of this Court by bringing a claim under Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). But Braemar knows full well that it does not have standing to bring a Section 14(a) claim. After all, in 2017, Braemar's predecessor—represented by Cadwalader Wickersham & Taft LLP, which represents Braemar here—sought to bring Section 14(a) claims against a stockholder. Judge Godbey dismissed the claims, holding that "[b]ecause the Court views section 14(a) as protecting those with voting rights, [a corporation] lacks standing to bring a section 14(a) claim" against one of its stockholders.

*Ashford Hosp. Prime Inc. v. Sessa Capital (Master) LP*, Nos. 3:16-CV-00527-N, 3:16-CV000713-N, 2017 WL 2955366, at *9 (N.D. Tex. Feb. 17, 2017).

Because Braemar lacks standing to bring the one claim that could invoke the jurisdiction of this Court, all of Braemar's claims fail at the outset. Without valid claims, Braemar plainly lacks good cause to obtain expedited discovery. Braemar's Motion for Expedited Discovery and Expedited Briefing Schedule (the "Motion to Expedite" or "MTE") should accordingly be denied.

Moreover, even if this Court had standing to consider it, Section 14(a) claims are subject to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Where, as here, a defendant intends to move to dismiss the complaint, the PSLRA imposes a mandatory stay of all discovery until that motion is resolved. The Motion to Expedite does not so much as acknowledge the PSLRA, much less establish the "exceptional circumstances" that would be necessary to lift the PSLRA's discovery stay.

The Motion to Expedite is thus improper on multiple grounds. It should be denied.

## STATEMENT OF FACTS

Blackwells is a multi-strategy investment fund run by Jason Aintabi focused on unlocking value and improving corporate governance particularly in the REIT sector. Blackwells is also one of Braemar's largest shareholders.

Braemar is a publicly traded Maryland real estate investment trust that manages a portfolio of luxury hotels and resorts. Compl. ¶ 4. Although Braemar contends that its "principal business objective" is to "maximize total returns for its stockholders," *id.* at ¶ 38, its incumbent board woefully failed to achieve that objective. In fact, over the past decade, Braemar's stock price has declined nearly 90%. *See* App. at 160 (Appendix in Support of Plaintiff's Motion for Preliminary Injunction ECF 4-2).

In addition, Braemar is managed under an external management agreement with Ashford Hospitality Advisors, LLC ("Ashford"), Compl. ¶ 15, under which Braemar pays fees and reimbursements to Ashford that dramatically exceed market rates. As Braemar's 2022 Form 10-K concedes "[t]he aggregate amount of fees and expense reimbursements paid to our advisor will exceed the average of internalized expenses of our industry peers." Appendix in Support of Defendants' Memo in Opposition to Plaintiff's Motion for Expedited Discovery and Briefing ("Op. App.") at 55 (Braemar Hotels & Resorts Inc., Annual Report (Form 10-K) (Mar. 10, 2022)). While this above-market arrangement directly taxes stockholder value, it benefits Monty Bennett, Braemar's longtime chairman. This is because, in addition to being Braemar's chairman, Mr. Bennett is also Ashford's chairman. Op. App. at 284 (Braemar Hotels & Resorts, Proxy Statement (Schedule 14A) (Mar. 28, 2024)).

For these and other reasons, as a stock analyst reviewing Braemar recently noted, "it is clear . . . that (1) conflicts exist among the various Ashford entities and (2) stock performance has been poor." *See* Op. App. at 355 (Rob Schneider, *Braemar Hotels faces board challenge from activist investor*, HOTEL INVESTMENT TODAY (Mar. 25, 2024), https://perma.cc/8RWR-V4LX). Blackwells thus believes transformative change is necessary to unlock Braemar's potential value. *See* ECF 4-2 at App. 540.

In an effort to bring such change about, on March 10, 2024, Blackwells sent a letter to Braemar stating its intention to nominate the Blackwells Nominees for election to the Board at Braemar's upcoming annual meeting and to submit certain proposals for the consideration of Braemar stockholders. *See* ECF 4-2 at App. 072. On March 24, 2024, consistent with its history of entrenching actions, Braemar's Board sent Blackwells a letter purporting to reject Blackwells' nomination notice. Compl. ¶ 96.

On March 24, 2024—the same day Braemar purported to reject Blackwells nomination notice—Braemar filed its Complaint and Motion for Preliminary Injunction ("PI Motion") in this action, seeking to preliminarily enjoin Blackwells from soliciting stockholder votes in favor of its nominees. Then on March 28, 2024, Braemar filed the present Motion to Expedite. As explained below, the Motion to Expedite should be denied.

## ARGUMENT

### A. Braemar lacks good cause to seek expedited discovery because it lacks standing to bring the sole claim that could invoke the jurisdiction of this Court.

In the Complaint, Braemar seeks to invoke federal question jurisdiction by bringing a claim "under Section 14(a) of the Exchange Act and the rules and regulations promulgated thereunder." Compl. ¶ 30. But Braemar—the sole plaintiff in this action—lacks standing to bring a Section 14(a) claim against Defendants. Under established Fifth Circuit law, only stockholders "with voting rights" have standing to pursue claims pursuant to Section 14(a) of the Act. *7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 229-30 (5th Cir. 1994); *see also Sessa*, 2017 WL 2955366, at *9 (same); *Tenet Healthcare Corp. v. Cmty. Health Sys., Inc.*, 839 F. Supp. 2d 869, 871-72 (N.D. Tex. 2012) (dismissing issuer's Section 14(a) claim for lack of standing).

Braemar does not have "voting rights" in its own elections. Rather, it is the "target corporation" in any such election. *Tenet*, 839 F. Supp. 2d at 871-72. As a result, Braemar lacks standing to bring a claim pursuant to Section 14(a) and the rules promulgated thereunder. Braemar's Section 14(a) claim is thus subject to dismissal at the pleadings stage. *Id.* (dismissing Section 14(a) claim brought by target corporation); *Sessa*, 2017 WL 2955366, at *9 (same).

Braemar's remaining claims are governed by Maryland state law. Braemar argues that the Court has "supplemental jurisdiction" over these claims. Compl. ¶ 33. But in the Fifth Circuit, "[t]he general rule is that a court should decline to exercise jurisdiction over remaining state-law

claims when all federal-law claims are eliminated before trial." *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009); *see also Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989))).

Braemar's only attempt to avoid this result is its argument that its state law claims rely on portions of Braemar's bylaws that "embed and incorporate disclosure requirements of Regulation 14A of the Exchange Act and the rules and regulations of agencies of the U.S. federal government in connection with acquisitions of control of a company." Compl. ¶ 32.

The attempt fails. "It is well-settled that the mere incorporation of a federal standard of conduct into a state law cause of action cannot alone support federal question jurisdiction." *Hinojosa v. Guidant Corp.*, No. Civ.A. C-06-159, 2006 WL 903720, at *3 (S.D. Tex. Apr. 7, 2006). And Braemar's claims do not fall within the "special and small category" of state law claims that arise under federal law. *Solera Nat'l Bancorp, Inc. v. Quagliano*, 2014 WL 2058120, at *1 (D. Colo. May 19, 2014) (quoting *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013)).

*Solera* is squarely on point. There, a corporation brought claims "seeking declaratory relief based on Defendant['s] alleged failure to comply with [its] bylaws concerning advance notice governing proposed nominees for election as directors." *Id.* As here, the corporation alleged that that the defendant failed to comply with a bylaw requiring disclosure of "any information related to a nominee that would be required to be disclosed under SEC Regulation 14A." *Id.* The court held that, even assuming this claim necessarily raised a disputed question concerning the interpretation of Rule 14a, it "does not fall within that 'special and small category' of cases which are considered to arise under federal law for purposes of federal question jurisdiction." *Id.* The

resolution of this issue by a state court, in a decision that would not be binding in future federal disputes, would not be "substantial . . . to the federal system as a whole." *Id.* at *2. And, because corporations are creatures of state law, "the issue of whether there has been compliance with [the corporation's] bylaws is not capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* The court thus found federal question jurisdiction lacking. This Court should reach the same result.[1]

There is thus no basis for this Court to exercise jurisdiction over any of Braemar's claims. In the absence of such jurisdiction, there plainly cannot be good cause to order expedited discovery. The Motion to Expedite must, accordingly, be denied.

**B. The PSLRA's stay of discovery mandates denial of the Motion to Expedite.**

Even if this Court did have jurisdiction to hear this lawsuit, Braemar's Motion to Expedite would still fail. According to the Complaint, "[t]his action arises under Section 14(a) of the Exchange Act." Compl. ¶ 30. As a result, it is governed by the PSLRA. 15 U.S.C. § 78u-4. As explained below, the PSLRA's mandatory stay of discovery bars the expedited discovery Braemar seeks.

---

[1] *See, e.g.*, *Florida Marine Transporters, Inc. v. Trinity Marine Products, Inc.*, No. CIV.A. 02–1902, 2002 WL 31246765, at *3 (E.D. La. Oct. 4, 2002) (no federal question in a state law breach of contract claim requiring interpretation of United States Coast Guard rules and regulations); *Oliver v. Trunkline Gas Co.*, 796 F.2d 86, 89-90 (5th Cir. 1986) ("[W]e are aware of no case in which any court, let alone the Supreme Court, has held that a *private* contract can give rise to federal-question jurisdiction simply by 'incorporating' some federal regulatory standard that would not have been binding on the parties by its own force" (emphasis in original)).

**1. The PSLRA imposes a mandatory stay of discovery on Braemar's claims until the Court has resolved Defendants' forthcoming Motion to Dismiss.**

The PSLRA is a 1995 statute enacted in response to "significant evidence of abuse in private securities litigation, particularly the filing of frivolous suits alleging securities violations designed solely to coerce companies to settle quickly and avoid the expense of litigation." *EP MedSystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 872 (3d Cir. 2000). To protect against such abuses, the PSLRA mandates that "[i]n any private action arising under [the Exchange Act], all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B).

The "stay is designed to stop 'sue first and ask questions later' tactics." *In re Enron Corp. Sec., Derivative & "Erisa" Litig.*, Nos. MDL-1446, Civ.A. H-01-3624, 2003 WL 230688, at *6 (S.D. Tex. Jan. 28, 2003) (citations omitted). "Congress clearly intended that complaints in these securities actions should stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed." *Id.*

Defendants intend to move to dismiss the Complaint. "[T]he PSLRA stay of discovery applies when an initial motion to dismiss is contemplated, but has not yet been filed." *Creeks v. Arotech Corp.*, No. 19-CV-10044, 2019 U.S. Dist. LEXIS 201871, at *2 (S.D.N.Y. Nov. 20, 2019) (quoting *Sedona Corp. v. Ladenburg Thalmann*, No. 03-CIV-3120, 2005 WL 2647945, at *2 n.1 (S.D.N.Y. Oct. 14, 2005) (collecting cases)); *see also Newby v. Enron Corp.*, 188 F. Supp. 2d 684, 709 (S.D. Tex. 2002) (finding that "discovery is stayed from the filing of the complaint until the

court has determined the sufficiency of the plaintiff's pleading") (emphasis omitted). Accordingly, Braemar's claims are subject to the PSLRA's mandatory stay of discovery.[2]

**2. The Motion to Expedite does not carry Braemar's heavy burden to establish extraordinary circumstances justifying the lifting of the PSLRA's mandatory stay of discovery.**

"The party seeking expedited discovery bears the burden of demonstrating that the PSLRA's mandatory stay should be lifted." *Davis v. Duncan Energy Partners L.P.*, 801 F. Supp. 2d 589, 592 (S.D. Tex. 2011). To meet this burden, a movant must show that "particularized discovery is necessary [1] to preserve evidence or [2] to prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B). In other words, the PSLRA's discovery stay may be lifted only in "exceptional circumstances." *In re Meta Platforms, Inc. Sec. Litig.*, No. 21-cv-08812-AMO, 2024 WL 923770, at *1 (N.D. Cal. Mar. 4, 2024).

Here, the Motion to Expedite ignores the PSLRA entirely. It is perhaps unsurprising, then, that Braemar falls well short of establishing (1) that expedited discovery is necessary to "preserve evidence" or (2) that Braemar would face "undue prejudice" absent expedited discovery, let alone

---

[2] This conclusion is applicable to all of Braemar's claims, even though some of them arise under Maryland state law. *See Barrett v. Wilson*, No. 4:11-CV-02852, 2011 WL 13134638, at *2 n.3 (S.D. Tex. Aug. 15, 2011) ("[The PSLRA's discovery] stay applies to [plaintiff's] claim for violation of the Securities Exchange Act of 1934, as well as his [state law] breach of fiduciary duty claims") (citing *SG Cowen Sec. Corp. v. U.S. Dist. Court*, 189 F.3d 909, 913 n.1 (9th Cir. 1999) ("Congress' attempt to address [concerns of discovery abuse] would be rendered meaningless if securities plaintiffs could circumvent the stay simply by asserting pendent state law claims in federal court in conjunction with their federal law claims."); *In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583(WHP), 2006 WL 1738078, at *3 (S.D.N.Y. June 26, 2006) (similar); *Benbow v. Aspen Tech., Inc.*, No. Civ. A. 02-2881, 2003 WL 1873910, at *5 (E.D. La. 2003) (applying the PSLRA discovery stay to state law claims, alongside the federal securities law claims)).

(3) that the discovery Braemar seeks "is particularized" toward such ends. There is thus no basis to lift the PSLRA's discovery stay here and the Motion to Expedite should accordingly be denied.

**(a) Braemar cannot establish that lifting the PSLRA's discovery stay is necessary to "preserve evidence."**

The PSLRA provides that an automatic discovery stay may be lifted if "particularized discovery is necessary to preserve evidence." 15 U.S.C. § 78u-4(b)(3)(B). Here, however, Braemar does "not claim that any evidence is in immediate and/or probable peril." *Sarantakis v. Gruttadauria*, No. 02 C 1609, 2002 WL 1803750, at *3 (N.D. Ill. Aug. 5, 2002) (denying motion to lift stay). Nor could it. Defendants are taking all necessary and appropriate steps to preserve and maintain evidence of potential relevance to Braemar's claims. There is thus no basis to lift the PSLRA's discovery stay in order to "preserve evidence." *Id.* ("[L]ifting the stay is not necessary to preserve evidence when, as in this case, the party from whom discovery is sought has represented to the court that it will maintain the evidence at issue.").

**(b) Braemar cannot establish that it would face "undue prejudice" absent the lifting of the PSLRA's discovery stay.**

Braemar has also failed to carry its burden to show that it would face "undue prejudice" absent the lifting of the PSLRA's discovery stay. In fact, having ignored the PSLRA's discovery stay entirely, the Motion to Expedite does not even attempt to argue that Braemar would face such "undue prejudice." Instead, Braemar argues that it "seeks expedited discovery to ensure speedy resolution of [its] motion to preliminarily enjoin [Blackwells'] proxy solicitation," which, according to Braemar, could lead to an "uninformed stockholder vote" at Braemar's 2024 annual meeting. MTE at 7. This is insufficient to establish that Braemar wrightould face "undue prejudice" absent the lifting of the PSLRA discovery stay for several reasons.

*First*, the lifting of the PSLRA's discovery stay is not necessary to accomplish a "speedy resolution" of the PI Motion. *Id.*

This is confirmed by Braemar's own actions in this litigation. Specifically, Braemar filed its PI Motion before seeking discovery. By so doing, Braemar implicitly represented that it *already* had sufficient evidence to support the motion. Braemar should not be permitted to now reverse course and contend that discovery is necessary to support its forthcoming reply brief. *See U.S. Bank, N.A. as Tr. for Registered Holders of AEGIS Asset Backed Sec. Tr. Mortgage Pass-Through Certificates, Series 2005-4 v. Richardson*, No. 3:17-CV-2271-L (BT), 2020 WL 10050787, at *2 n.4 (N.D. Tex. June 1, 2020) (Lindsay, J.) ("[I]t is generally improper for a party to introduce new evidence at the reply stage of a motion proceeding because the purpose of a reply brief is to rebut the nonmovant's response, not to introduce new evidence."); *compare, e.g.*, *Davis*, 801 F. Supp. 2d at 592 (considering a motion seeking expedited discovery to support an "*anticipated* motion for a preliminary injunction" (emphasis added)).

Indeed, Braemar's representation was not merely implicit. The PI Motion explicitly asserts that Braemar *already* has "evidence" that "leaves no doubt" that the motion should succeed and "eviscerates" Blackwells' positions. PI Motion at 9, 11. While the evidence in fact establishes nothing of the sort,[3] having filed the PI Motion without first seeking discovery and taken the position that it already had ample evidence to support the motion, Braemar cannot now claim it requires expedited discovery before it can seek its preliminary injunction. *See BHI Energy I Power Servs., LLC v. KVP Energy Servs., LLC*, No. 3:22-CV-1981-L, *LLC*, 2023 WL 223179, at *8 (N.D.

[3] To the contrary—and as Defendants will explain in their forthcoming opposition to the PI Motion—the evidence shows that Braemar has no likelihood of success on its claims.

Tex. Jan. 17, 2023) (Lindsay, J.) (denying motion for expedited discovery where "[p]laintiff's request to conduct discovery contradicts its assertion that the verified allegations in its pleadings and Motion for Preliminary Injunction are sufficient or 'ample' to support the relief sought").

Nor would proceeding on Braemar's PI Motion without first taking discovery be at all unusual. In fact, federal courts have repeatedly denied motions to lift the PSLRA stay in advance of an upcoming stockholder vote on the ground that a plaintiff is not prohibited from filing a PI motion without first taking discovery. *See Schaper v. Lensar, Inc.*, No. 23-692-GBW, 2023 WL 4532462, at *6 (D. Del. July 13, 2023) (denying expedited discovery despite upcoming stockholder vote where "Plaintiff is not prohibited from filing his preliminary injunction without expedited discovery and may rely on the Complaint"); *Desmarais v. First Niagra Fin. Grp., Inc.*, No. 15-1226-LPS-CJB, 2016 WL 768257, at *2 (D. Del. Feb. 26, 2016) (denying motion to expedite because "[w]ere Plaintiff's request for expedited discovery denied, he would still have the ability to file a preliminary injunction motion in the instant case seeking to enjoin the First Niagra/KeyCorp merger vote. In doing so, he could still rely on, *inter alia*, the legal and factual matter that is referenced in his 33–page Complaint (or in any forthcoming Amended Complaint)"). The lifting of the PSLRA's discovery stay is thus not necessary for a "speedy" resolution of the PI Motion in advance of Braemar's 2024 annual meeting. MTE at 7.

*Second*, Braemar's contention that it needs discovery to ensure a "speedy" resolution of its PI Motion before its 2024 annual meeting is self-contradictory: The discovery Braemar seeks would in fact *delay* resolution of the PI Motion, as compared to the briefing schedule contemplated by the Northern District of Texas' Local Civil Rules (the "Local Rules" or "LR").[4]

---

[4] The Northern District of Texas requires that opposition motions be filed within 21 days from the date a motion is filed, with reply briefs due 14 days later, thus, briefing on the Motion should be

Indeed, Braemar's conduct in litigating their Motion to Expedite makes clear that speed is not Braemar's top priority.[5] On March 25, 2024, this Court ordered Braemar to effect service as to each Defendant, and notify the Court of the completion of service, before the Court would set a briefing schedule for Braemar's Motion to Expedite. ECF 7 at 1-2. Despite clear direction from the Court, Braemar chose to wait *five days* to provide Mr. Cricenti's counsel with the requisite materials and file its Notice of Service to All Defendants, from the time counsel for the last Defendant to be served—Mr. Cricenti—accepted service of the Complaint. *See* ECF 25-1 ¶ 2 (acknowledging that Mr. Cricenti's counsel notified Braemar that he was authorized to accept service on behalf of Mr. Cricenti on March 29, 2024). When a party seeking expedited relief fails to act expeditiously, expedited or injunctive relief is not warranted. *See Degeeter v. McNeill*, No. 07-2512-Ml/P, 2007 WL 9706576 at *3 (W.D. Tenn. Sept. 21, 2007) (denying motion to expedite discovery in case arising out of allegedly deficient proxy statement, where plaintiff delayed in filing her motion for expedited discovery, "thus creating some of the time sensitivity she seeks the court to remedy through expedited discovery.").

As the Motion to Expedite notes, on March 28, 2024, Braemar unilaterally chose May 15, 2024, as the date for its 2024 annual meeting. MTE at 2; Op. App. at 280 (Braemar Hotels &

---

complete by April 28, 2024. LR 7.1(e), (f). Braemar's proposed schedule would have the parties completing briefing of the PI Motion on May 3, 2024—five days later than the Local Rules provide. MTE at 9-10. Lifting the PSLRA stay would *prevent* the "speedy resolution" of the PI Motion, ensuring that the PI Motion is *not* resolved until the proxy campaign for the 2024 annual meeting is all but completed.

[5] Braemar's decision to wait two weeks to issue their letter purporting to reject Blackwells' nominees, only to file their Complaint premised on the nomination notice the very same day, is also telling. Braemar transparently granted itself an extension on seeking relief, while also insisting that the Court and Defendants defer to its proposed schedule. For this additional reason, Braemar's Motion to Expedite does not serve to ensure the "speedy resolution" of the PI Motion.

Resorts, Proxy Statement (Schedule 14A) (Mar. 28, 2024)). Later that same evening, Braemar filed its Motion to Expedite, in which it proposes to take discovery throughout April and to use that discovery in a reply brief to be filed on May 3, 2024, in support of its PI Motion. MTE at 9-10. *After that*, Defendants would be entitled to file a sur-reply to respond to any new evidence Braemar seeks to interject in its reply brief. *BHI*, 2023 WL 223179, at *3 (striking new evidence interjected on reply and noting that, were such evidence allowed, the Court "may allow the nonmovant an opportunity to file a response to the new materials, followed by an additional reply brief by the movant"). *Still later*, the Court would need to hold any hearing on the PI Motion, consider the parties' arguments, and issue its opinion on the PI Motion.

No matter how quickly these additional steps might be completed, if Braemar is permitted to take expedited discovery, the PI Motion will be resolved mere days (if at all) before May 15, 2024—the date on which Braemar unilaterally scheduled its annual meeting. Thus, allowing the discovery Braemar seeks, far from "avoid[ing] needless confusion" among stockholders during the proxy campaign period, MTE at 2, itself ensures that stockholders are left in limbo about the state of Braemar's PI Motion *throughout the entirety* of any proxy campaign period preceding a May 15, 2024 annual meeting. Moreover, in light of Braemar's delay, since the filing of Braemar's Motion to Expedite, Braemar's proposed schedule is now completely unworkable. Under Braemar's impracticable schedule, the parties should have already: 1) served document requests, 2) served their responses and objections to said document requests, 3) served third party discovery, 4) finalized an agreed protective order, and 5) begun document production, as of the date of this opposition's filing. MTE at 9-10. Now, faced with the consequences of its own delay, Braemar is not entitled to discovery that encroaches even further on the Annual Meeting deadline.

To avoid leaving stockholders in limbo over this issue, two options are available. One is for Braemar to seek a prompt resolution of its PI Motion *without* delaying a month to take new discovery. The second is for Braemar to reschedule its annual meeting to a later date in 2024 in order to allow for a resolution of the PI Motion in advance of the annual meeting's campaign season. Defendants are prepared to proceed under either of these alternatives. However, the alternative the Motion to Expedite proposes—delaying the resolution of the PI Motion until May while maintaining a May 15, 2024 annual meeting date—must be rejected because it ensures the very result (a lack of resolution of the PI Motion throughout the campaign season) that Braemar claims it is trying to avoid by taking expedited discovery.

*Third*, even if lifting the PSLRA discovery stay were necessary to a resolution of the PI Motion in advance of the 2024 annual meeting—and, as explained above, it is not—this would not constitute an "undue prejudice" on Braemar because that deadline is entirely "self-inflicted." At the time Braemar filed its motion for preliminary injunction, it had not set the date for its 2024 annual meeting. And Maryland law permits Braemar to schedule its 2024 annual meeting at any time during the calendar year of 2024. *See* Md. Corp. & Ass'ns § 2-501 (merely requiring "an annual meeting"). If Braemar wants the Court to resolve the PI Motion before its 2024 annual meeting, it can reschedule the meeting to a later date. In fact, Braemar has expressly reserved the right to do just that should it not prevail on the PI Motion. Op. App. at 281 (Braemar Hotels & Resorts, Proxy Statement (Schedule 14A) (Mar. 28, 2024)). Braemar's purported need for a "speedy" resolution to the PI Motion is thus entirely avoidable.

As a result, contrary to Braemar's contention, it does not face irreparable harm—or any harm at all, beyond what it may inflict upon itself—absent the granting of the Motion to Expedite. *See Villareal v. Saenz*, No. 5-20-CV-00571-OLG-RBF, 2021 WL 1940620, at *5 (W.D. Tex. May

14, 2021), *report and recommendation adopted*, 2021 WL 4057570 (W.D. Tex. Aug. 4, 2021) ("Avoidable harm isn't irreparable."); *Bellin v. La Pensee Condo. Ass'n, Inc.*, No. 05-80071-CIV, 2005 WL 8156021, at *9 (S.D. Fla. Oct. 13, 2005), *report and recommendation adopted,* 2006 WL 8433644 (S.D. Fla. Jan. 6, 2006) ("[I]f Plaintiff can mitigate the threatened 'irreparable harm,' she cannot refuse to do so and yet still claim that she would be irreparably injured absent an injunction."); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2948.1 (3d ed. 2023) ("Not surprisingly, a party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted.").

For all these reasons, Braemar has fallen short of its burden to show that it would face an "undue prejudice" absent the lifting of the PSLRA's discovery stay. In fact, it is obvious that Braemar's claim that it seeks expedited discovery to "ensure speedy resolution of [its] motion to preliminarily enjoin" Defendants, MTE at 7, is merely pretextual. After all, Braemar can obtain a speedy resolution without such discovery and engaging in a discovery period would delay the PI Motion's resolution. That Braemar nonetheless seeks such discovery can only be interpreted as an implicit admission that—contrary to the PI Motion's bold rhetoric—Braemar does not believe it currently has sufficient evidence to support an injunction and would like to fish for more. But "[w]anting discovery and not having access to it is not the kind of undue prejudice that justifies lifting a [PSLRA] discovery stay." *Meta*, 2024 WL 923770, at *1. To the contrary "the very point of the PSLRA stay is that [a plaintiff's] complaint must 'stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed.'" *Id.* at *2 (quoting *Petrie v. Elec. Game Card*, 761 F.3d 959, 966 (9th Cir. 2014)).[6]

---

[6] Nor does Braemar's desire to "level the playing field" with respect to Defendants' purportedly "unique knowledge" support the motion. MTE at 8. Such an "informational disadvantage" is an

The PSLRA's mandatory discovery stay should thus not be lifted here and the Motion to Expedite should be denied.

In an effort to avoid this result, the Motion to Expedite cites two cases in which courts lifted a PSLRA stay to allow discovery in advance of an upcoming annual meeting. *See* MTE at 7-8 (citing *Nichting v. DPL Inc.*, No. 3:11-CV-141, 2011 WL 2892945 (S.D. Ohio July 15, 2011); *Ashford Hosp. Tr., Inc. v. Cygnus Capital, Inc.*, No. 3:21-cv-00125-M, 2021 WL 3631142 (N.D. Tex. Feb. 18, 2021)). As an initial matter, these decisions are contrary to the majority of authority on this topic. *See, e.g.*, *Desmarais*, 2016 WL 768257, at *2, *3 n.3 (sharply disagreeing with *Nichting*, collecting cases to the contrary, and noting that *Nichting* relies on a pre-PSLRA case and fails to meaningfully discuss the plaintiff's alternatives to expedited discovery); *Schaper*, 2023 WL 4532462, at *6 (similar; denying expedited discovery despite upcoming stockholder vote); *Lusk v. Life Time Fitness, Inc.*, No. 15-1911, 2015 WL 2374205, at *3 (D. Minn. May 18, 2015) (similar); *City of Birmingham Ret. & Relief Sys. v. Armstrong*, No. 16-17-RGA, 2016 WL 880503, at *2 (D. Del. Mar. 1, 2016) ("Several courts have rejected the argument that the risk of an uninformed stockholder vote on a proposed transaction by itself creates undue prejudice." (collecting cases)); *Alaska Laborers Emps. Ret. Fund v. Mays Clear Channel Commc'ns, Inc.*, No. SA-07-CA-0042-RF, 2007 WL 9710527, at *5 (W.D. Tex. Feb. 14, 2007) (declining to lift the PSLRA stay despite impending shareholder vote). This Court, however, need not reach the question of which of these lines of cases is correct because *Nichting* and *Ashford* are

---

inherent aspect of the PSLRA's discovery stay in every case—not grounds for lifting it. *Meta*, 2024 WL 923770, at *1. Braemar's lone case to the contrary—*Tri Cnty. Wholesale Distribs., Inc. v. Labatt USA Operating Co., LLC*, No. 2:13-CV-317, 2013 WL 12180497 (S.D. Ohio Apr. 22, 2013)—is inapposite because it did not involve a PSLRA discovery stay. MTE at 8.

distinguishable. Neither opinion considered *any* of the issues discussed above: (1) a PI Motion on file declaring that the plaintiff already had all the evidence necessary to prevail, (2) a request for relief that would not lead to a resolution meaningfully in advance of the upcoming meeting, or (3) a deadline that is entirely avoidable and self-inflicted by the movant. Each of these facts requires denial of the Motion to Expedite.

**3. Braemar's discovery requests are not "particularized" to its purported need for the discovery.**

In order to meet its burden of seeking only "particularized" discovery, a movant "must adequately specify the target of the requested discovery and the types of information needed to relieve that burden." *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37, 38 (D.D.C. 2005) (quoting *In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 108 (D. Mass. 2002)). Here, Braemar's discovery requests are not remotely "particularized" to the purported need of Braemar's PI Motion, providing an additional reason that the Motion to Expedite must be denied.

For example, Braemar asserts that it is "essential" that it be permitted to take the depositions of five individuals. MTE at 6. But Braemar admits that it is only able to identify one necessary deponent—Jason Aintabi. *Id.* For the other four deponents, Braemar states vaguely that they will be "identified through [the course of] discovery as acting on behalf of or in concert with the Blackwells Defendants." *Id.* A request for four seven-hour depositions of yet-unidentified individuals flies in the face of the PSLRA's requirement that discovery requests be "particularized." This is the definition of a "fishing expedition," inappropriate for discovery generally, let alone discovery under a PSLRA stay. *See, e.g.*, *Davis*, 801 F. Supp. 2d at 593-98 (denying request to depose three identified deponents and the "person most knowledgeable" concerning the transaction at issue).

Braemar's document requests likewise fall short of the requirement for "particularized" discovery. Braemar's Motion for Preliminary Injunction is based entirely on its (misguided) contention that Blackwells should have detailed in its nomination notice (1) its purported interest in acquiring Braemar and (2) additional information about certain "Stockholder Associated Persons" purportedly involved in Blackwells' attempts to acquire Braemar. *See* PI Motion at 14-20. But Braemar's proposed Requests for Production go far beyond these narrow issues. For instance, Braemar seeks "Documents sufficient to Identify all of the direct owners, indirect owners, investors, equity holders, investment managers, officers, directors, members, general partners, limited partners, and sources of funding of the Blackwells Defendants during the Relevant Time Period" and "Documents sufficient to identify and trace each layer of ownership of each partner [of Blackwells] up to and including the ultimate individual or corporation that owns each such member or partner." MTE (Ex. A) at 16, Requests 2 and 3; *see also id.*, Request 1 (requesting similar "Identif[ication]" with respect to "each Defendant"). "Identify" is then defined in an exceedingly expansive fashion utterly divorced from the ordinary English meaning of "identify." *Id.* at 9–10, Definition 39. The definition purports to require Defendants to detail for all of these disparate groups of individuals and entities:

> (a) When used in connection with a natural person:
>
> i. Name;
>
> ii. Mailing address or addresses;
>
> iii. Amount of such natural person's investment in Blackwells Capital, Blackwells Onshore, Blackwells Holding, Vandewater, Blackwells Asset Management, or BW Coinvest;
>
> iv. Amount of Braemar Securities held by such natural person, directly or indirectly, during the Relevant Time Period;

v. Dates that Braemar Securities were bought or sold, directly or indirectly, by such natural person; and

vi. Amount of money for which such natural person bought or sold Braemar Securities, directly or indirectly.

(b) When used in connection with a Person other than a natural person:

i. Name;

ii. Mailing address or addresses;

iii. Principal place of business;

iv. State of incorporation;

v. Corporate structure and ownership;

vi. Amount of such Person's investment in each Defendant;

vii. Amount of Braemar Securities held by such person, directly or indirectly, during the Relevant Time Period;

viii. Dates that Braemar Securities were bought or sold, directly or indirectly, by such person;

ix. Amount of Braemar Securities held by such person, directly or indirectly, in a personal account; and

x. Amount of money for which such person bought or sold Braemar Securities, directly or indirectly.

*Id.* Braemar does not begin to explain why, for example, it is "essential" to its PI Motion for Defendants to provide a full accounting of the purchases of any Braemar securities by any investor—or even "indirect owner"—in Braemar. Nor could it. *None* of this information is remotely relevant to the narrow issues raised in the PI Motion.

Braemar's Request 4 seeks all "Communications" regarding anything having to do with Braemar. *Id.* at 16, Request 4. The term "Communications" is defined exceedingly broadly to include:

> "Communications" as used herein shall mean any and all inquiries, discussions, conversations, agreements, contracts, understandings, meetings, telephone conversations (including recorded or taped telephone conversations), voice messages (including messages left on cellular phones), letters, correspondence, notes, facsimiles, facsimile confirmation sheets, electronic mail, instant messages (including, without limitation, messages exchanged via iMessage, WhatsApp, Skype or Skype for Business, Slack, Microsoft Teams, or any other messaging service), text messages, voice messages, Bloomberg messages, blog entries, postings on internet websites, or other forms of written or verbal intercourse (electronic or otherwise), and any Documents exchanged.

*Id.* at 4, Definition 14. In other words, Braemar asks Defendants to engage in broad ranging electronic searches of its communications in order to find any document that might touch on any aspect of Braemar's business. Not only does this far outstrip the discrete issues raised by the PI Motion, such search-term driven electronic discovery goes far beyond the "particularized" discovery that can be permissible if a PSLRA stay may be lifted. *Davis*, 801 F. Supp. 2d at 594 ("[P]laintiffs' reference to the use of 'search terms' in document request number 6 indicates that plaintiffs are seeking extensive electronic discovery which, by its nature, would likely be burdensome for defendants to produce in the short time available before [] unitholders are scheduled to vote on the Proposed Acquisition."); *Nichting*, 2011 WL 2892945, at *3 (allowing depositions, but rejecting document requests as overbroad "especially because they will be guided 'by using search terms,'" which indicates "that Plaintiff requests, *inter alia*, extensive electronic discovery, which, by its very nature, would likely be exceedingly burdensome"); *Botton v. Ness Techs. Inc.*, No. 11-3950, 2011 WL 3438705, at *2 (D.N.J. Aug. 4, 2011) ("discovery requests that use 'search terms' may not be sufficiently particularized in PSLRA actions").

The remaining requests are similar. They request "*All* Documents and Communications" regarding broad ranging topics that far outstrip the discrete issues raised in the PI Motion. Identifying such documents would go far beyond the low-cost, particularized exercise envisioned

by the PSLRA. It would impermissibly require Defendants to engage in expensive, search-term driven electronic discovery. Courts do not permit such requests in the context of a PSLRA discovery stay. *See Herrley v. Frozen Food Exp. Indus., Inc.*, No. 3:13-cv-3004-B(BF), 2013 WL 4417699, at *2 (N.D. Tex. Aug. 19, 2013) (denying motion for expedited discovery in PSLRA case where plaintiff requested "[a]ll documents and communications"); *Davis*, 801 F. Supp. 2d at 593-94 (same with respect to requests for "all materials" relating to the transaction at issue); *Botton*, 2011 WL 3438705, at *3 (same with respect to minutes from "any meetings" attended by "any member[]" of the Board where the transaction at issue was discussed). Because Plaintiff fails to craft "particularized" document requests as the PSLRA requires, these requests should be denied.

**C. Braemar's request for expedited discovery also fails to satisfy the standard for expedited discovery under the Federal Rules of Civil Procedure.**

While Braemar's failure to justify a lifting of the PSLRA's discovery stay is sufficient to resolve this case, Braemar's request for expedited discovery also fails to satisfy the standard for expedited discovery under the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 26(d)(1) prohibits discovery "from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1).

As a result, "[e]xpedited discovery is not the norm." *Barrett*, 2011 WL 13134638, at *4 (citation omitted). Typically, courts "have granted expedited discovery requests when there is some showing of irreparable harm that can be addressed by limited, expedited discovery." *Id.* Here, as explained above, granting expedited discovery would not prevent any harm—let alone irreparable harm—to Braemar. *See supra*, § B(2). And the harm Braemar claims it would suffer is entirely avoidable and self-inflicted. *Id.* Accordingly, expedited discovery is not warranted and

the Motion to Expedite should be denied. *See Barrett*, 2011 WL 13134638, at *4 (denying motion to expedite absent showing that expedited discovery would avert irreparable harm).

## **CONCLUSION**

Defendants respectfully request that the Court deny Braemar's Motion to Expedite Discovery and Expedited Briefing Schedule.

Date: April 11, 2024

Respectfully submitted,

*/s/ Robert Ritchie*

Robert Ritchie
State Bar No. 24079213
K. Virginia Burke DeBeer
State Bar No. 24097437
VINSON & ELKINS LLP
2001 Ross Avenue
Dallas, Texas 75201
Phone: (214) 220-7823
Email: rritchie@velaw.com
Email: vdebeer@velaw.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2024, a true and correct copy of the foregoing document was filed via the Court's CM/ECF filing system and served on all counsel of record.

*/s/ Robert Ritchie*
Robert Ritchie